# FRED MEIER v. NORTHWEST THRESHER COMPANY.[1]

November 1, 1912.

Nos. 17,819—(198).

**Chattel mortgage construed — earnings from machinery sold.**

A provision of a mortgage executed to secure the purchase price of threshing machinery, that the gross earnings of the machinery should be paid to the mortgagee, free from operation liens, but that forty per cent of the earnings so received by the mortgagee should by it be paid to the mortgagor for operation expenses, construed and *held* to give the mortgagor an immediate and absolute right to forty per cent of the proceeds, less expense of collection of certain threshing accounts assigned by him, pursuant to the terms of the mortgage, to the mortgagor and by it collected.

**Operation expenses — recovery from mortgagee.**

Transaction in which the said claims were assigned to the mortgagee, considered and *held* to import a direction from the mortgagor to the mortgagee to pay certain debts due, at the time of such assignment, from the mortgagor to the plaintiff and his assignors for labor performed in connection with the operation of the said machinery, so that the plaintiff had the right to recover from the mortgagee that proportion of the proceeds of the assigned accounts which, by the terms of the mortgage, belonged to the mortgagor for operating expenses.

Action in the district court for Waseca county to recover $113.50 upon six causes of action for work and labor performed by plaintiff and his assignors. The facts are stated in the opinion. The complaint alleged that defendant requested Wolter to turn over to it for

[1] Reported in 138 N. W. 36.

119 M.—19.

collection all accounts for threshing done by him during the fall of 1908, while plaintiff and his assignors were working about the machine, and particularly agreed that in consideration of doing this, defendant would pay to each of the persons named the amount due them for such work and labor performed; that Wolter turned over the accounts; that defendant collected from them a sum greatly in excess of the amount due to the persons named, which defendant promised to pay. The answer denied the foregoing allegations, and set up the terms of the chattel mortgage mentioned in the opinion as the only agreement as to the division of earnings ever made between Wolter and defendant. The reply was a general denial.

The case was tried before Childress, J., who denied plaintiff's motion for a directed verdict and granted defendant's motion for a directed verdict. From an order denying his motion for judgment in his favor notwithstanding the verdict or for a new trial, plaintiff appealed. Reversed and new trial granted.

*Moonan & Moonan,* for appellant.

*P. McGovern* and *S. B. McBeath,* for respondent.

PHILIP E. BROWN, J.

Action to recover $113.50, with interest, for labor performed by the plaintiff and others whose claims have been assigned to him, in the operation of threshing machinery owned and operated by one Lawrence Wolter. On the trial of the cause to a jury, both parties having moved for a verdict, by the court's direction the jury returned a verdict for the defendant. This is an appeal by the plaintiff from an order denying his alternative motion for judgment or for a new trial.

It appears that, in the year 1906, the said Wolter, in order to secure the payment of a part of the purchase price, namely, $2,583.75, of a threshing rig bought by him from the defendant, executed to the latter a chattel mortgage thereon; and for further security all of the gross earnings of the machinery during the years 1906, 1907, and 1908, and until the purchase price was paid, were by the terms of the said mortgage assigned and mortgaged to the defendant, and it was thereby agreed that such gross earnings should include the earn-

ings, and proceeds of the earnings, of all persons, teams, and vehicles, necessary as an entire complement of labor employed in the operation of threshing done by the mortgagor during the said years, in the township wherein he then resided or elsewhere in this state. The defendant agreed therein to deliver to the mortgagor or to his order, upon request, forty per cent of the said gross earnings received by it, for the use of the mortgagor in defraying the operating expenses of the machinery, and it was further stipulated that the defendant at its option should "select, in whatever form said gross earnings may be received or held by it, said proportion to be so delivered" to the mortgagor. Finally, the mortgagor covenanted that the gross earnings so mortgaged to the defendant should be exempt from all liens, charges, and expenses incident to the operations of threshing and that all such liens, etc., should be paid by him; and further that he would keep a written statement containing the name and address of each person for whom threshing was done, the date thereof, and the amount earned, and subject to the defendant's inspection; and also that settlement of the gross earnings mortgaged should be made by him for each threshing job done, and that the mortgagor would procure signed acceptances thereof and would turn the same over to the defendant, or its agent, for collection, upon the condition that all moneys so collected were to be applied on the mortgage indebtedness, less the cost of collection, the defendant not to be liable, however, for any accepted settlements so long as the same remained unpaid. The mortgage contained other stipulations not here material.

Wolter operated the machinery under this agreement in the years 1906 and 1907, turning over the threshing accounts to the defendant from time to time thereunder, to be applied on his mortgage indebtedness, and continued to operate the rig up to September 14, 1908, when the separator of the machinery was destroyed by fire. He was then indebted to the plaintiff and to other persons named in the complaint for labor performed in operating the rig, in the sum of $113.50. Shortly thereafter Wolter assigned to the defendant, at the instance of one Eustice, the defendant's collector, without any consideration further than those specified by the mortgage, threshing accounts earned with the machinery in 1908, to the amount of $268.31, of which the

defendant collected and retained the sum of $248.89. Wolter did not turn over to the defendant all the accounts for the earnings of the machinery for threshing done in 1908.

The plaintiff claims that, when Wolter assigned the accounts mentioned to the defendant in 1908, as a consideration therefor it was agreed between Eustice and Wolter that the defendant would pay all the claims for operating expenses of the threshing machinery, and there is in the record sufficient evidence of the actual making of the agreement between Eustice and Wolter to make this question one of fact for the jury. It is further claimed by the plaintiff that, under the doctrine of implied or apparent authority and also of ratification, this agreement was binding upon the defendant. It is also claimed by the plaintiff that the chattel mortgage as to the earnings of the machinery was void. All of these claims are controverted by the defendant.

1. In order to determine the questions as to the authority of the defendant's collector, Eustice, and the binding effect of his alleged agreement upon the defendant, it is necessary briefly to consider the relevant relations between Wolter and the defendant under and by virtue of the mortgage. As stated, the plaintiff claims, or, to be more exact, suggests the invalidity of the mortgage of the earnings as to the plaintiff and his assignors. The defendant, on the other hand, insists upon the validity of the mortgage. In view, however, of the fact that this question, notwithstanding its general importance, has been left by the parties to this appeal practically without argument, and furthermore, because it is by no means clear that the upholding of this plaintiff's contention could affect the conclusions reached, we will, for the purposes of this case, both now and hereafter, sustain the defendant's contention on this point, and hold that the mortgage is valid as between the parties thereto, and also as against this plaintiff and his assignors described in the complaint.

2. This brings us to the consideration of the rights of the parties to the mortgage. The instrument is ambiguous in its terms and of such a nature that, so far as the defendant is concerned, the latter is not entitled to any other than a strict construction thereof, and its purpose must be held to be primarily to secure Wolter's obligations to the defendant, but with such stipulated allowance of the earnings of

the machinery to Wolter as would enable him to carry on the business of threshing. Accordingly, under the familiar rule that equity regards as done what ought to be done, as soon as a threshing account was earned the lien of the mortgage attached thereto, and under a fair construction of the instrument forty per cent of such account when collected, less the expense, perhaps, of its collection incurred by the defendant, became the absolute property of Wolter, and this amount the defendant was, by the terms of the mortgage, obligated to pay to Wolter or to his order. And from this it follows that the trial court erred in directing a verdict for the defendant; for, though we cannot sustain the plaintiff's contention that Eustice had implied or apparent authority to bind the defendant by the agreement alleged to have been made at the time of the assignment of $268.31 in accounts to the defendant, as above mentioned, Wolter being charged with knowledge of the terms of the mortgage, and there being nothing in the evidence or in the record to indicate that Eustice was authorized to do more than to proceed to take assignments of the accounts pursuant to the provisions of the mortgage, or that he had any authority other than might be inferred from such provisions in the instrument under which the parties had been acting for two seasons; and though it cannot be held that the defendant ratified the said agreement between Eustice and Wolter by collecting the accounts in connection with the assignment of which such agreement is alleged to have been made, or by retaining their proceeds, there being nothing in the record to show that the defendant had any knowledge of the alleged agreement prior to the bringing of this action; yet, in view of the construction which we have above placed upon the mortgage, the transaction between Eustice and Wolter in which the said accounts were assigned to the defendant must be considered to import at least a direction by Wolter to the defendant to pay the former's forty per cent of the accounts collected by the latter to the plaintiff and the other laborers mentioned in the complaint. This direction was binding upon the defendant, and for its failure to comply therewith the defendant is answerable to the plaintiff in this action.

If this case be tried again it should be remembered that this is not an action between the company and Wolter, and that no consideration

of any general indebtedness from the latter to the former is material, and, furthermore, that the plaintiff can recover in this action only the amount of the labor claims set out in the complaint, less any sums which may have been paid upon any of such claims, and that in no event can he, in this action, recover more than forty per cent of the assigned accounts unless he should establish a valid agreement by the defendant to pay more.

Order reversed and a new trial granted.